UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 10-cr-00051-WYD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  TIMOTHY McGLOTHIN;

    Defendant.

## ORDER

THIS MATTER comes before me following the September 8, 2010 hearing on Defendant Timothy McGlothin's Motion for Notice of Government's Intent to Introduce Evidence of Other Crimes, Wrongs or Acts Pursuant to Federal Rule of Evidence 404(b) filed March 8, 2010 [d/e 36]. The motion was also addressed at a hearing on June 29, 2010. Having reviewed the parties' pleadings, arguments of counsel and the applicable law, I make the following findings.

**I.**   **BACKGROUND**

Between December 2, 2009 and January 6, 2010, a series of armed bank robberies was committed in the Denver area. The investigation of the crimes led officers to Co-Defendant Joshua Licona who ultimately admitted his involvement in an armed robbery of the Bank of Denver on January 6, 2010. Licona and Timothy McGlothin were subsequently indicted for armed bank robbery and a violation of 18 U.S.C. § 924(c) regarding the

January 6, 2010 bank robbery. The Government has given notice to Defendant McGlothin of its intent to introduce evidence of a bank robbery that occurred on December 23, 2009.

The Government has provided the following proffer for the December 23, 2009 and January 6, 2010 bank robberies:

> On Wednesday, December 23, 2009, at approximately 5:20 pm, three unknown individuals, [hereafter referred to as the "robber(s)"], entered the Bank of Denver, a federally insured institution, located at 800 East 17th Avenue, in Denver, and robbed the bank of $50,435.95 in U.S. Currency. Upon entering the bank, two of the robbers went behind the teller line, jumped over the counter, and took money from all of the teller drawers. They then forced an employee/teller to go inside of the vault room and open the vault, which allowed them to take money from the vault. The money was placed in a green bag which one of the robbers had brought inside. The third robber held the employees at gun point, ordering them to stand still, lower their heads and raise their arms above their heads. The robbers then fled on foot. The robbers were described as being three black males, all of whom were wearing dark clothing, to include dark jackets, pants, shirts and bandanas/covers over their faces, and were armed with pistols. During the follow-up investigation, video surveillance of the possible suspect/getaway vehicle was obtained from the Briargate Condominiums, located at 837 East 17th Avenue, Denver, Colorado, on the same block, but across the street from the bank. The video contained footage of the possible suspect vehicle, appearing to be an older model, dark in color, four-door sedan, parked in the alley shortly before the robbery. Shortly after the robbery, three unknown persons, dressed in dark clothing, are shown reentering the sedan and fleeing the area of the robbery.
>
> On Wednesday, January 6, 2010, at approximately 5:40 pm, the same bank, the Bank of Denver, located at 800 East 17th Avenue, in Denver, was again robbed by three unknown individuals who entered and robbed the bank of $94,300.00. Upon entering the bank, two of the robbers again went behind the teller line, jumped over the counter and attempted to take money from the teller drawers. The third suspect stayed in the lobby area, armed with an unknown caliber handgun. The two robbers who had gone behind the counter then entered the vault room, where one of the employees was, and forced her to place money from the vault into dark bags that they had brought with them. Those robbers in the vault then jumped back over the counter, at which time all three suspects fled the location out the front door. All three suspects were described as being black males, wearing all dark-colored clothing including black hoodies/jackets, pants, bandanas and gloves.

**II.     Legal Analysis**

The Government first argues that the evidence of the December 23, 2009 bank robbery is admissible here without reference to Rule 404(b). "While Rule 404(b) precludes evidence of 'other crimes, wrongs or acts,' it does not apply to testimony offered as direct evidence of charged crimes." *United States v. Portillo-Quezada*, 469 F.3d 1345, 1353 (10th Cir. 2006). "Rule 404(b) only applies to evidence of acts extrinsic to the charged crime." *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir.1993) (quotations omitted). "Other act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." (quotations omitted); *see also United States v. Record*, 873 F.2d 1363, 1372 n. 5 (10th Cir.1989) ("An uncharged act may not be extrinsic if it was part of the scheme for which a defendant is being prosecuted or if it was inextricably intertwined with the charged crime such that a witness' testimony would have been confusing and incomplete without mention of the prior act.") (citations and quotations omitted).

I agree with Defendant that the evidence of the December 23, 2009 bank robbery is extrinsic to the January 6, 2010 bank robbery. While the two bank robberies are of the same or similar character, they are not part of a single criminal episode. The December 23, 2009 bank robbery was also not preliminary to the January 6, 2010 robbery. These were two separate robberies occurring two weeks apart. The Government failed to explain how law enforcement's focus on the getaway car in the second robbery requires the introduction of all the evidence of the first robbery. Witness testimony will not be confusing

or incomplete without mention of the December 23 robbery. Accordingly, I find, based on the record before me, that the December 23, 2009 robbery is not intrinsic to the crime charged in the Indictment.

I must next evaluate the December 23, 2009, robbery under the four-part admissibility test for 404(b) evidence articulated in *Huddleston v. United States*, 485 U.S. 681 (1988). Extrinsic evidence is admissible under Rule 404(b) if these four factors are satisfied: (1) the evidence must be offered for a proper purpose; (2) it must be relevant; (3) its probative value must not be substantially outweighed by its potential for unfair prejudice under Federal Rule of Evidence 403; and (4) the court gives a proper limiting instruction, if requested by the defendant. *Id.* at 691-92. The Government argues here that the "proper purpose" for the evidence would be to establish identity and pattern/course of conduct.

The Tenth Circuit has held that to prove identity, evidence of prior illegal acts need not be identical to the crime charged, so long as, based on a "totality of the comparison," the acts share enough elements to constitute a "signature quality."... [A] few highly unique factors may constitute a "signature," while a number of lesser unique factors although insufficient to generate a strong inference of identity if considered separately, may be of significant probative value when considered together. *United States v. Shumway*, 112 F.3d 1413, 1420 (10th Cir.1997). The Government relies on *United States v. Scott*, 185 F.3d 876, 1999 WL 546783, **2 (10th Cir. June 1, 1999) to suggest that the evidence of the December 23, 2009 robbery would be admissible to establish identity. In *Scott,* the Tenth Circuit analyzed whether the district properly admitted evidence of a prior bank robbery

under 404(b) in a trial of a subsequent bank robbery. On the issue of identity, the court stated,

> [T]he November 26 bank robbery involved several similarities to the July 14 bank robbery, and was therefore probative on the question of the perpetrator's identity. Both robberies occurred at the First Security Bank on Atherton Drive in Salt Lake City just eight months apart. A lone masked robber described as a male Polynesian with physical characteristics similar to Defendant committed both robberies. On each occasion, the robber brandished a weapon in his left hand. On each occasion, the robber provided a back pack to the teller. When the teller returned the back pack to the robber, he told the teller to put more money in the pack, but then grabbed the pack and fled. On each occasion, the robber fled in a stolen vehicle which was parked in the same area outside the bank. Perhaps most significantly, both vehicles were found in the same remote location at a mobile home trailer park some distance from the bank. These facts, though not particularly unique when considered separately, certainly bear a "signature quality" when considered together.

*Scott*, 185 F.3d 876, 1999 WL 546783, **2.

The *Scott* decision, however, is inapposite to the facts of this case. The defendant in *Scott* had plead guilty to the prior bank robbery. In this case, the identity of the bank robbers in the December 23 robbery is a contested issue. I also believe that the facts of these two bank robberies represent less of a "signature quality" than the facts in *Scott.* Both robberies occurred at the same bank 14 days apart and were perpetrated by 3 robbers. The Government merely states that each robbery was committed by three black males wearing dark colored clothing. There is no discussion of any shared physical characteristics of the robbers involved in the two robberies such as height and weight. There is no suggestion that a particular suspect held a gun in a particular manner. There is no argument that one of the suspects fled in the same manner or that the getaway car was parked in the same location. I believe the Government's suggestion that a "signature

quality" existed here would be stronger if the officers had actually encountered the getaway car in the same location it had been observed during the first robbery. While the evidence indicates that the officers were going to look in that location, the Government represents that the getaway car was located about a mile away from the robbery. Accordingly, the Government has failed to demonstrate that the facts of the December 23, 2009 bank robbery establish the identity of the January 6, 2010 bank robbery. *Shumway*, 112 F.3d at 1420.

I also agree with Defendant that the Government has failed to demonstrate that the two robberies establish a pattern or course of conduct. The Government has string-cited numerous cases without providing any analysis as to how those cases support a conclusion that pattern or course of conduct exists here. See Govt.'s Mot., pp 13-14. The Government's cases mostly involve long standing patterns over a number of years. In contrast, here we have two bank robberies that occurred over a span of 14 days. *See, e.g., United States v. Roberts*, 185 F.3d 1125, 1142 (10th Cir. 1999). Thus, without more, I see no basis to conclude that the Government has shown a pattern or course of conduct here. The Government has therefore failed to satisfy the first factor of the *Huddleston* test, that the evidence is offered for a proper purpose.[1]  485 U.S. at 691-92.

---

[1] The third *Huddleston* factor, the potential for unfair prejudice to defendant may not substantially outweigh the probative value of the evidence as required by Rule 403, has also not been met here. Given the strong evidence against Defendant McGlothin for the crime charged in the Indictment (Licona's testimony), evidence concerning an uncharged crime that is nowhere near as strong seems to impose unfair prejudice.

## III.  CONCLUSION

Accordingly, it is

ORDERED that Defendant Timothy McGlothin's Request for Notice by Government of Intent to Introduce Evidence Pursuant to Rule 807, F.R.E. [d/e 42] filed March 8, 2010 is **GRANTED** to the extent that the Government has provided notice of the evidence of other crimes it seeks to introduce against Defendant.  It is

FURTHER ORDERED that evidence related to the December 23, 2009 bank robbery is not admissible against Defendant Timothy McGlothin.  It is

FURTHER ORDERED that the parties shall meet and confer and contact chambers on or before **Tuesday, October 12, 2010** to obtain a trial setting within speedy trial deadlines.

Dated: October 7, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge